The Chancellor.
The complainants are judgment and execution creditors of George W. Doane, who have exhausted their remedy at law, 'and now apply to this court to aid them in appropriating to the payment of their debts property which is beyond the reach of legal process. The bill is so long and complicated, and introduces such a variety of matters involving so many questions of controversy, that I deem it necessary to notice only those prominent features of the case about which any serious difficulty, as to the legal and equitable rights of the parties, can be entertained. The bill is, I think, multifarious ; and if the objection had been taken by demurrer, it would have prevailed. But the defendants have filed their answers, and taken testimony involving the merits of the whole controversy. They have submitted their cause upon argument, without objection to the form of the bill. It is true the bill should now be dismissed, if its multifariousness is of a character to embarrass the court in making a decree in the case binding upon the parties, and which cannot be carried into execution consistently with the rules and practice of the court. Having reached the conclusion, that the complainants are entitled to relief upon matters involved in the controversy, in which all the parties have such an interest as to make them not only proper but necessary parties to the suit, and that a proper decree can be made consistent with the general scope of the bill, without causing any embarrassment to the parties as to any other rights which they may have, or to the parties or court in executing the decree, it appears to me right, and in accordance with the practice of the *86 court, that the defect of the bill should not defeat the complainants in obtaining the relief to which they are, in the judgment of the court, clearly entitled.
In giving my opinion, I shall notice only so much of the pleadings, and make such reference to the case generally, as may be necessary to elucidate the points upon which the decision is made.
On the 20th of March, 1849, the debtor, George W. Doane, made a general assignment, under the statute, for the benefit of his creditors. The assignees assumed the duties of their trust, and the assignment has been so far formally executed as that the assignees have rendered their final account to the Orphans Court of the county of Burlington, which has been settled and approved by a decree of that court.
The bill alleges that the assignment is fraudulent—
First. Because of the peculiar relationship which, at the time of the assignment, the assignees bore to the debtor, in regard to the business transactions which led to his embarrassment, and to the assignment which followed, and the property assigned.
Second. Because the debtor did not make out, and annex to his assignment, a true inventory of his property, but concealed the same.
"With regard to the first objection. Garrit S. Cannon was one of the trustees of Burlington College at the time of the assignment, and Robert B. Aertsen, in less than one month after it was made, was appointed the financial agent of the college. Burlington College was greatly embarrassed in consequence of the failure of George W. Doane. While the college was carried on in the name of trustees, acting under a special act of incorporation, the real estate and college appurtenances had been transferred by the trustees to the possession of Bishop Doane, under an agreement that he was to carry on the college at his own risk; and this arrangement was made, as the trustees admit by their answer, for the purpose of avoid *87 ing all pecuniary responsibilities themselves, and placing them upon Bishop Doane. lie was to have the possession of the college property for ten years without paying any rent. "When the assignment was made, seven years of the term were then yet unexpired. The bishop had put upon the property upwards of §40,000 in improvements. It will at once be seen how important it was that the trustees should he reinstated in the possession of the college property, and should also become the owners of the personal property in the college buildings, which were necessary in order to keep the college in operation. The interest of Burlington College and of the general creditors of Bishop Doane were antagonistical. The college did not stand in the position of a general creditor having an interest with the other creditors that all the property which the debtor had assigned should bo sold to the best advantage. The college must have the real estate and buildings, and the personal property in them. The existence of the college required if. It was the interest of the trustees to get all this property at as low a rate as possible. It was the interest of the other creditors to make it bring as high a price as possible. The result shows that this was so. The trustees became the purchasers of every article of personal property appertaining to the college buildings and grounds, except one --article which brought one dollar and twenty-five cents, and they became the purchasers of the bishop’s interest in the real estate of the college, which included the §40,000 improvements, for the sum of sixty-five dollars. Here then were individuals appointed to carry out this trust whose duty it was, as assignees, to see that the debtor’s property brought as high a price as possible, while the very existence of a public institution, whose agents they were, and whose welfare they were bound to look after and protect, depended upon their possession of the debtor’s property, and wliich of course it was desirable for them to obtain at tbe lowest possible price. No doubt the very respectable gen *88 tlemen who executed the trust discharged their duties with as much fidelity as any two men could do acting under similar circumstances. But they were not in a position in which the law generally trusts to a man’s acting impartially. Such was the character of the trust committed to them, both on account of the value of the property, and its peculiar character and situation, as well as on account of the conflicting interest involved, that impartial men, men indifferent to the parties, and whose judgment was not affected by opposing interests, should have been selected to execute it.
A court of equity may presume fraud, and declare an assignment fraudulent, from the character of the assignee appointed by the debtor. Cram v. Mitchel and others, 1 Sandf. Ch. R. 251; Ceeriee and Ceeriee v. Hart and others, 2 Sandf. Ch. R. 353; Browning and others v. Hart and others, 6 Barb. S. C. R. 91.
But to what extent, ..and under what peculiar circumstances, a court of equity might be justified in exercising the right of interfering with an assignment, presuming it fraudulent from the character of the assignees appointed by the debtor; or whether it might interfere, and appoint other assignees to execute the trust, when it was satisfactorily shown that the assignees named are unfit persons to act in that capacity, are questions not necessary to be decided in this ease. Bor, however far the court might be disposed to extend its jurisdiction in the particulars referred to, the principles established could not be applied here. The complainants are too late in presenting their case to obtain the specific relief of setting aside the assignment on the ground of fraud, or of displacing the trustees, and appointing others in their place, on account of the unfitness of the individuals named as assignees. The trust has been executed. Declaring the assignment fraudulent, or displacing the assignees, will not restore the debtor’s property, or place it within the reach of the complainants, either at law or equity. But although the court *89 cannot interfere in the way suggested, yet the position which the assignees occupied has a hearing, and a very important and controling one, in reference to other questions involved to he noticed hereafter; and therefore it is that I have noticed so particularly the objections that existed to the appointment of the individuals as assignees who have undertaken to execute this trust.
As to the second specification to show the assignment fraudulent — that the debtor did not make out, and annex to his assignment, a true inventory of his property, but concealed the same. If the allegation were true, and presented good ground for the interference of the court, there is no relief which the court can afford the complainants now, after the execution of fhe trust and the final settlement of the accounts of the assignees. I ought to say, however, that I do not think the allegation is sustained. Whatever was retained from the inventory was surrendered to the assignees; there was no property concealed. The inventory is made out with unusual particularity, and it is a matter of surprise that, with such an amount and variety of property, there was so little omitted in the inventory annexed to the assignment.
But there are other grounds upon which relief is claimed. It is insisted that the sale of the personal property was fraudulently made, and was so conducted by the assignees as to transfer it to members of the debtor’s family and to the trustees of the college for a mere nominal price, and for the purpose of enabling them to pass it over into the possession of the debtor, for his own use. If this allegation were proved, the complainants would be entitled to relief, and the assignees would be personally liable to the creditors for the difference between the fair value of the articles so fraudulently sold and the price actually realized for them. The fact, that the assignees had settled their accounts, would interpose no obstacle to such relief. The Orphans Court, where the accounts .were settled, could give no relief to the creditors for such a fraud. The only *90 remedy is in this court, and the decree of the Orphans Court is no barrier to this court’s administering such relief as the cestui que trust is entitled to for such a breach of the trust by his trustee. Besides, the statute expressly declares that “ the settlement and decree of said court shall be conclusive on all parties, except for the assets which may afterwards come to hand or for frauds or apparent error.” This court is the proper tribunal to investigate such a fraud, and to redress it.
To make, however, the assignees personally liable fraud must be proved. It is not sufficient to show that the assignees disposed of the property indiscreetly and much below its value, unconnected with other circumstances going to establish the unfairness of the sale, and that a fraud was meditated. But there is enough shown in the case to put the assignees to the proof that the sale was conducted without any fraud being meditated. The manner in which the silver was sold, and of the sale of some other articles, was injudicious, and was calculated to give dissatisfaction. It is usual to sell silver by the piece or by the weight, and not a large quantity of it in bulk with the general contents of a sideboard, as was done in this case. But with a few exceptions, I think the assignees have proved that the sale was conducted fairly, and that the property was sold for as a high price as that kind of property usually brings at such sales.
Another ground of complaint is the disposition which was made by the assignees, the trustees of Burlington College and Bishop Doane, of the college property.
On the 28th of September, 1846, the board of trustees of Burlington College passed the following resolution: “Resolved, that the Rt. Rev. G. W. Doane, D. D., LL. D., president of Burlington College, have the permission and authority of the board to occupy the property of ‘ Green Lawn,’ lately purchased by them, without rent or interest, and organize and carry on the school and college for the space of ten years, under the direction of the trustees, at *91 his own risk and for his own benefit, it being understood that in case of his death mean while the agreement thereupon shall terminate.”
The bishop took possession, and, with the approbation of the trustees, erected buildings, gas works, and other valuable improvements, involving an expenditure of some forty thousand dollars. In the mean time, the college was carried on under the resolution, in the name and under the direction of the trustees, but at the risk and for the benefit of the bishop.
In March, 1849, the bishop was hopelessly insolvent; and, on the 26th of that month, he made an assignment for the benefit of his creditors. The trustees of Burlington College knew the fact of his insolvency, and that he had made the assignment. This assignment passed, by virtue of the statute, all the debtor’s estate, both legal and equitable, whether specified in the inventory annexed to the assignment or not. The exception, which was made in the inventory, of “ any claim he might have for buildings and permanent improvements on the property of the college” amounts to nothing. His equitable interest in the property passed by the assignment; and any future transfer by him of that interest was a fraud upon the assignment, and is absolutely void.
On the 16th of April, 1849, the bishop made a formal surrender of the college property to the trustees. They accepted the surrender, and took charge of the property, as appears by an entry of that date upon their book of minutes. That surrender of the bishop, and its acceptance by the trustees, so far as they interfered with the rights of the creditors, were fraudulent and void against them, and the trustees are entitled to no benefit from the surrender, as against the creditors.
But the trustees claim the right to this property by virtue of a sale made by the assignees, at which sale the trustees were the purchasers. This sale the complainants allege to have been fraudulent, and they insist that the *92 fraud is to be inferred from several circumstances- — from tbe common object of tbe parties, viz. their determination tbat the trustees should have tbe property without any consideration — from tbe circumstances of tbe sale — from tbe inadequacy of price — and from tbe relationship of vendor and vendee.
First, tbe common object of tbe parties. Tbe interest which tbe debtor bad in tbe property was not put in tbe inventory, but was, in express terms, excluded from it. This shows tbe intention and determination of tbe debtor, tbat bis creditors should not have this property, if be could help it. It may be said, tbat tbe very fact of tbe debtor’s disclosing tbe property in bis assignment shows tbat be did not meditate fraud; tbat if be did, concealment would have better answered bis purpose. But it shows this conclusively, tbat tbe debtor meditated an act which tbe law considers fraudulent as against creditors, whatever might have been tbe estimate put upon it by tbe debtor. If tbe debtor bad no interest, there was nothing “to except.” If be had any interest, it passed by tbe assignment. Tbe object which tbe debtor bad in view is a matter of importance. It was to surrender this property unencumbered, and with all its valuable improvements, to tbe trustees of Burlington College — a college in which be bad a deep personal interest, and with whose name and fame bis own were identified — and to place it beyond tbe reach of these very creditors, whose labor and money, bestowed and expended upon his credit, bad made it valuable. Tbat this was tbe object is proved by tbe fact, tbat in less than three weeks afterwards tbe surrender referred to was made to tbe trustees without any consideration whatever. Here, then, is tbe intention of tbe debtor made manifest with as much certainty as acts can establish tbe motives of any man, tbat these trustees should have tbe property in spite of bis creditors, and without any consideration. Acts to carry out such a purpose are fraudulent in tbe eye of tbe law, and tbe result of them will be declared void, as *93 against all persons whose rights are affected by them. It is important, also, to ascertain the intention and purposes of the trustees. 'Were they willing to accept the property upon the terms and under the eireumstanees it was offered to them ? If so, then they were willing to appropriate the property of others to their own use without any consideration, and to deprive the creditors of the debtor of their just rights. They did accept the property from the debtor, and took possession of it, and have retained possession ever since. The only object of the surrender and of its acceptance, was that the trustees might hold the property against the rights and claims of the debtor. Thus we have the debtor and the trustees acting in concert to accomplish a common object, and that object an illegal one.
How far did the assignees act in concert in accomplishing this common object? Did they acquiesce? The fair inference, from circumstances, is that they did. They were both connected with the college. As the trustees of the creditors, they did not assert the rights of their eestuis que trust, but suffered the property to be surrendered by their debtor, and transferred without making the reasonable request, that for so valuable a transfer of property some trifling consideration should be given. It was after this surrender by the bishop, and the acceptance of it by the trustees, and the acquiescence on the part of the assignees, that the assignees went through a mere formality of a public sale of the property.
On the 18th of April, two days after the surrender to the trustees, and on the day of the sale of the personal property, the assignees exposed for sale “all the rights and interest of George W. Doane theretofore transferred by the trustees of Burlington College to him.”
This sale was made without public notice. On the 10th of April, the assignees gave notice, by printed handbills, that on the eighteenth of that month they would sell, at public sale, all the personal property of George W. Doane, *94 giving in the notice a general description of the character of the property. But there was no intimation, in the advertisement, that they would sell his equitable or legal interest in any real estate. Admitting that the interest which the debtor had in the premises does not come within that description of property contained in the twelfth section of the assignment act, and that no direction is contained in the act as to what notice the assignees shall give, it cannot be contended that the assignees, in the exercise of their' discretion, could sell such property without giving any notice of sale. The notice and manner of sale of the personal property are left discretionary with the assignees; and yet can it be doubted that if, without public notice, the assignees had sold all the personal property of the debtor to the trustees of the college at an inadequate price, such sale would have been held fraudulent in the eye of the law? This was a description of property which, more than any other, required that reasonable notice should be given of its sale. The interest of the debtor in it was of a nature to require legal counsel and advice. The sale was a surprise upon those interested in the property’s bringing a fair consideration, and they were deprived of the opportunity of protecting their just rights.
Again, the manner in which the sale was conducted is an evidence of fraud. The interest of the debtor in the property required explanation, and it was the duty of the assignees to have given it. The assignees knew what that interest was, and so did the trustees of Burlington College. It was a matter of pub'ic record, but the evidence of it was on the private records of the trustees. It was a mere form to offer such property without a full explanation. The hill charges that no such explanation was given, and it is evident, from the answers both of the trustees and of the assignees, that such explanation was not given as the peculiar situation and character of the debtor’s interest in the property required. The specific charge of the bill is, that the assignees sold without explaining or giving any information to the persons present at the sale what *95 said right was — how it was derived — or in what it consisted. The answer of the assignees affirms that one of the assignees did give such information and explanation. But this is not such an answer as this court is satisfied with. The assignees were bound to state the particulars of such explanation as is alleged to have been given, in order that the court might see whether the information and explanation were correct. Judging from other parts of the answer of the assignees in connection with the answer of Bishop Doane, the information given must have been erroneous, and of course such as to mislead, and not enlighten, those present at the sale. Bishop Doane, in Ms answer says, he did not include his interest in Burlington College in the inventory to his assignment, because it was not such an interest as could be assigned or transferred by him. The assignees say it was omitted from the assignment through inadvertence, the same being, in their opinion under the circumstances, of little value. With this estimate of the legal and equitable nature and value of that interest, it is perfectly manifest that the charge of the bill is correct- — -that the interest -was sold without a proper explanation of what it consisted. I do not mean to say, that in any case of sale by an assignee, it is necessary for him, at the time of sale, to explain and give notice of the title of the debtor in the premises. But I do mean to say, that in this case, considering the interest of the debtor in the property — the position in which the assignees, the debtor, and the trustees stood to each other in reference to the college and to this property — the determination that all of them had manifested, by their previous acts and conduct, that the trustees should have the property — and finally the sale without public notice, and the purchase of it by the trustees at a nominal price; with these circumstances, the fact that the sale was made without describing the character of the debtor’s interest in the property, is of great weight in considering the bona fdes of the transaction.
Again, the inadequacy of price confirms the position, *96 that the property should have been advertised, and its situation and character explained at the time of sale. It is another evidence of fraud. To show that sixty-five dollars, the price at the assignees’ sale, was grossly inadequate, let us look at the interest which the debtor had in the property. He had a right to the enjoyment of the property for more than seven years then yet to come, contingent only upon his death during the term. "Within the two previous years he had put on the property permanent improvements involving an expenditure of about $35,000, and had expended in gas fixtures about $3000. ■ He had, then, the legal possession under his term, and had paid a valuable consideration for his right in and possession of the property. This consideration, consisting of those improvements, was advanced by some of the creditors for whose benefit the assignment was made. A great part of the gas fixtures, such as the gasometer and the apparatus for generating gas, as between landlord and tenant, are moveable property. They would, it is true, pass to the heir at law with the inheritance, or, between grantor and grantee, as fixtures to the real estate; but, as between landlord and tenant, the latter has a right to remove them during the term. Exp. Cotton v. Nutter, 2 M. D. & De G. 725; Winslow and others v. Merchants Ins. Co., 4 Met. 306.
Here, then, was valuable property, worth several hundred dollars, which the purchaser might remove immediately; and yet this was but a small interest in the-whole property which was struck off at the price of sixty-five dollars. An unexpired term of seven years in an estate worth upwards of fifty thousand dollars, with other property worth several hundred dollars, were sold, without any previous public notice, for sixty-five dollars, and were purchased by a corporation of which the debtor was the president, and the assignees — one of them a trustee, and the other the financial agent of the corporation. The president of the college contracts debts, and places improvements on the property at an expenditure of $50,000. He *97 then stops payment, and, through the instrumentality of an assignment, transfers the property to the trustees of a college, of which he is the alpha and omega, for a mere nominal price. Such a sale must, upon every principle upon which this court administers equity, be deemed fraudulent and void. Not that any moral turpitude attaches to any of the individuals who are connected with the transaction, but because, from the circumstances, a court of equity will infer fraud, however pure and honest may be the motives and intentions of the actors. One of the assignees who was examined testifies that, in conducting the sale, they acted under the best legal advice in the state; but this does not affect the legality of the transaction.
The only remaining questions are, whether the complainants are in a position, and have such an interest, as to entitle them to maintain this bill ? and if they have, what decree should be made in the case ?
As a general rule, any party whose rights are injuriously affected by a fraud may exhibit his bill in this court, and obtain relief against it. The assignment was for the benefit of all the creditors of the debtor; and for any fraud committed in the execution of that trust, any one or more of the creditors may have relief by applying to a court of equity. It is true the complainants did not exhibit their claims to the assignees, and come in under the assignment; but notwithstanding they did not, yet, by the express terms of the eleventh section of the act, they are entitled to the surplus, if any, after the debts exhibited and allowed are fully satisfied. This gives them a greater interest in seeing to it, that all the debtor’s property is fully and honestly appropriated to its legitimate purpose. But independent of the section of the statute referred to, the complainants, as judgment and execution creditors at law applying for the aid of this court to secure the property of their debtor which is beyond the reach of legal process, have the right to question the disposition of the debtor’s property by himself; and much *98 more have they the right to question its disposition by those who have the legal control of it by the debtor’s appointment for the benefit of his creditors. The complainants have filed their bill on behalf of themselves and other creditors of George W. Doane; and the property must be disposed of according to the legal liens upon it and their priorities. The interest of the complainants being only in the surplus, after the creditors who have proved their claims under the assignment are paid, it may be that the complainants will get nothing. But this is no objection to the complainants maintaining this bill, any more than it would be an objection to a third mortgagee having a decree upon a bill filed upon his mortgage, that the mortgaged property was inadequate to pay the prior encumbrances. The complainants are rightly before the court, and are entitled to redress here. If not, they are wronged, and yet remediless. No relief can now, or could at any time have been given by the Orphans Court. Even if that court, upon exceptions filed in due time, could have set aside the sale, which is more than doubtful, that would have been a very inadequate remedy for the wrong. The trustees must, in a measure, make good to the creditors the pecuniary loss they have sustained by being fraudulently deprived of their just rights; that relief this court only can give.
The remaining question is — what decree ought to be made in the cause ? It is not enough merely to set aside the sale. On the 26th of September next, the ten years’ term which the debtor had in the premises expires. This would give the creditors the benefit of less than one year of the term only, when they were justly entitled to seven. Upon the plainest principles of equity, the fraud-doer should account for the actual profits he has derived from the fraud. The trustees of Burlington College have had the enjoyment of the property for six years. It did not belong to them, and it is but reasonable and right that they should pay for their occupation and enjoyment of pro *99 perty which, belonged to others. This is but even-handed justice. It is no hardship upon the trustees. Their speculation must be a profitable one in any event. In less than a year, they will be the owners, and in possession of property worth forty thousand dollars, which has cost them only $65. It is not right, that they should enjoy without remuneration to the creditors, at whose cost and by whose misfortunes they are thus enriched, that little interest in the property which belongs to them. They have had the entire enjoyment of the whole property for the last six years. It belonged to Bishop Doane’s creditors. They have been deprived of its value and benefit by the trustees. The value the trustees put upon the property for á seven years’ term was sixty-five dollars. They cannot complain that they should now bo required to pay only such sum as a master of this court shall estimate at that value. There must he a reference to a master to take an account of the fair annual rent of the property, called “ Green lawn,” from the time it was taken possession of by the trustees of Burlington College, under the surrender, up to the time of making the report. In taking the account, the master will make an allowance for taxes, and will value the property as it was when the trustees took possession of it, and without reference to any permanent improvements put upon the property since.
Upon the coming in of the report, the amount ascertained will be declared to be a lien upon the property; and if the trustees fail to pay it within such reasonable time as the court shall fix the property will be sold for the purpose. The proceeds will be applied — first, to pay the costs of the complainants in this suit, then the creditors under the assignment, and the balance, if any, will he distributed among the complainants and such remaining creditors as shall come in and contribute to this suit. In making a disposition of the proceeds, the rights of the creditors under the assignment must he protected, and the assignment carried out according to the provisions of the *100 statute. It is not necessary that this should be done in the Orphans Court. This being property which has been brought into this court in the exercise of its own peculiar jurisdiction, it will keep the control of the fund, and see that it is distributed among the creditors according to their respective liens and priorities.